CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 06 2017

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| TONIA WOODSON NEWTON, et al., | ) |
| Plaintiffs, | ) Civil Action No. 3:16CV00058 |
| v. | ) **MEMORANDUM OPINION** |
| BENEFICIAL FINANCIAL I, INC., et al., | ) By: Hon. Glen E. Conrad |
| Defendants. | ) Chief United States District Judge |

Tonia Woodson Newton, Michael Early Woodson, and Donald Lewis Woodson, Jr. filed this action against Beneficial Financial I, Inc. ("Beneficial") and Ditech Financial, LLC ("Ditech"). The case is presently before the court on the defendants' motions to dismiss. The court held a hearing on the motions on March 31, 2017. For the reasons set forth below, the motions will be denied.

## Background

The following facts, taken from the plaintiffs' second amended complaint, are accepted as true for purposes of the defendants' motions to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

On January 26, 2005, the late Judith F. Woodson, the plaintiffs' mother, obtained a home mortgage loan (the "First Loan") from Beneficial Mortgage Company of Virginia for property located at 1967 Red Hill Road in Gordonsville, Virginia (the "Property"). The First Loan was evidenced by a loan repayment and security agreement and secured by a deed of trust on the Property (the "First Deed of Trust").

On March 30, 2006, Ms. Woodson obtained a home equity line of credit from Beneficial Discount Company of Virginia (the "Line of Credit"). The Line of Credit was secured by second deed of trust on the Property (the "Second Deed of Trust").

Defendant Beneficial succeeded to the interests of Beneficial Mortgage Company of Virginia and Beneficial Discount Company. Several years later, according to the plaintiffs, Beneficial cancelled or discharged the Line of Credit debt.

For tax year 2012, Beneficial filed with the Internal Revenue Service ("IRS") a Form 1099-C (the "1099-C Form"). The 1099-C Form, titled "Cancellation of Debt," listed Beneficial as the creditor and Ms. Woodson as the debtor. 2d Am. Compl. Ex. D, Docket No. 35-1 at 20. It also referenced the account number for the Line of Credit and identified the "Amount of Debt Discharged" as $30,749.87. Id. Beneficial sent Ms. Woodson a copy of the 1099-C Form. The form's pre-printed "Instructions for Debtor," provided, in pertinent part, as follows:

> You received this form because . . . an applicable financial entity (a lender) has discharged (canceled or forgiven) a debt you owed, or because an identifiable event has occurred that either is or is deemed to be a discharge of a debt of $600 or more. If a creditor has discharged a debt you owed, you are required to include the discharged amount in your income, even if it is less than $600, on the "Other Income" line of your Form 1040.

Id. The plaintiffs allege that the filing of the 1099-C Form subjected Ms. Woodson to additional income tax liability.

Ms. Woodson died intestate on March 20, 2015. Prior to her death, a representative of Beneficial advised Ms. Woodson that she did not need to make any additional payments on the Line of Credit. Likewise, following Ms. Woodson's death, a lender representative advised Tonia Newton that no payments were required on the Line of Credit. Around the same time, Beneficial denied the plaintiffs' request for approval of a short sale of the Property, based on the assertion that there was sufficient equity in the Property to pay off the balance of the First Loan in full.

2

The plaintiffs maintain that Beneficial's position on the requested short sale was consistent with their understanding that the Line of Credit debt had been discharged by Beneficial. According to the plaintiffs, the Property would have otherwise been "underwater," if it still "had been subject to the lien of both the First Deed of Trust and the Second Deed of Trust." 2d Am. Compl. ¶ 14(E).

Despite numerous requests from the plaintiffs, Beneficial never took any action to release the Second Deed of Trust lien. Instead, Beneficial assigned its interest in the Line of Credit to Ditech. The plaintiffs allege that if Beneficial had complied with their requests, Donald Woodson would have been able to obtain a loan to purchase the Property for an amount that would have fully satisfied the balance of the First Mortgage Loan. Because the Property remained encumbered by the Second Deed of Trust lien, he was unable to do so.

The plaintiffs eventually fell into arrears on the First Mortgage Loan. Beneficial appointed Surety Trustees, LLC as substitute trustee for the purpose of initiating foreclosure proceedings. On May 11, 2016, the law firm of McCabe, Weisberg & Conway, LLC notified the plaintiffs, on behalf of Beneficial, that the original debt instrument could not be produced, that Surety Trustees, LLC had been appointed to conduct a foreclosure sale, and that, in fourteen days, Beneficial would ask the trustee to proceed with the sale of the Property.

The foreclosure sale was scheduled to be conducted on July 12, 2016 at 2:15 p.m. On July 1, 2016, the plaintiffs filed suit against Beneficial and Ditech in the Circuit Court for the County of Louisa. Following a contested emergency hearing, the Circuit Court issued an injunction against the foreclosure sale.

The case was removed to this court on August 5, 2016. On January 6, 2017, the plaintiffs filed a second amended complaint containing six counts. The first four counts are premised on the assertion that Beneficial cancelled the Line of Credit debt, and thus that the plaintiffs were

3

and are entitled to a release of the Second Deed of Trust lien. In Count One, the plaintiffs seek to "quiet title" against the Second Deed of Trust. Id. at 5. In Count Two, the plaintiffs seek "an order for removal of the lien of the Second Deed of Trust, and for attorney's fees," pursuant to Virginia Code § 55-66.5. In Count Three, the plaintiffs assert a claim for damages against Beneficial for refusing to remove the Second Deed of Trust lien from the public land records. In Count Four, the plaintiffs seek a declaratory judgment that Beneficial is not entitled to foreclose on the Property unless and until the Second Deed of Trust lien is removed.

The second amended complaint also contains two counts that are not based on the assertion that the Line of Credit debt was cancelled by Beneficial. In Count Five, the plaintiffs seek a declaratory judgment that Beneficial is not entitled to foreclose on the Property unless and until it complies with Virginia Code § 55-59.1, which sets forth the procedural requirements for foreclosure where the note or other evidence of indebtedness cannot be produced. In Count Six, the plaintiffs seek a declaratory judgment regarding the actual status of the First Mortgage Loan. The plaintiffs contend that Ms. Woodson and Beneficial "entered into a loan modification in 2014," which has not been carried out by Beneficial, and that the lender has claimed the right to "bogus foreclosure costs, bogus interest charges, and bogus attorney's fees." Id. at ¶ 57.

**Standard of Review**

The defendants have moved to dismiss the second amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). Accordingly, the court's "evaluation is thus generally limited to a review of the allegations of the complaint itself." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief

4

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face,'" meaning that it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

## Discussion

### I. Counts One through Four

Both defendants have moved to dismiss the counts that are premised on the assertion that Beneficial cancelled the Line of Credit debt. The defendants argue that the plaintiffs' assertion in this regard is based primarily on the 1099-C Form filed by Beneficial, and that the IRS form is not prima facie evidence, in and of itself, that the Line of Credit debt was cancelled.

The defendants rely heavily on the United States Court of Appeals for the Fourth Circuit's decision in FDIC v. Cashion, 720 F.3d 169 (4th Cir. 2013), in which the Court considered whether the introduction into evidence of a 1099-C Form created a genuine issue of material fact as to whether an underlying note had been cancelled or assigned. 720 F.3d at 177. The Fourth Circuit surveyed decisions from a variety of state and lower federal courts on the issue, and observed that there was "no uniformity in how these courts have resolved the central inquiry." Id. Although some lower courts had held that "filing a Form 1099-C with the IRS constitutes prima facie evidence of an intent to discharge a loan," the Fourth Circuit found "a different approach taken by a majority of the courts to consider the matter ultimately more persuasive." Id. at 178. Applying that approach, which "relies principally on the language of the IRS regulations and the purpose of a Form 1099-C," the Fourth Circuit concluded that "filing a

5

Form 1099-C is a creditor's required means of satisfying a reporting obligation to the IRS; it is not a means of accomplishing an actual discharge of debt, nor is it required only where an actual discharge has already occurred." Id. at 178-79. Accordingly, "because a creditor can be required to file a Form 1099-C even where a debt has not been cancelled, the mere fact that a Form 1099-C is filed does not constitute sufficient evidence, standing alone, that a debt has been cancelled." Id. at 180. Since Cashion's claim of cancellation was "based solely on the 1099-C Form," the Fourth Circuit held, as a matter of law, that a jury could not have rendered a verdict in Cashion's favor. Id. Accordingly, the Fourth Circuit affirmed the grant of summary judgment to the FDIC. Id.

In reaching its decision, however, the Fourth Circuit was "careful to note the specific circumstances" of the case before it and the "narrowness" of its holding. Id. at 181. The Court observed that the case was "likely an oddity, where the 1099-C Form [was] the only evidence of debt discharge before the Court." Id. The Court emphasized that "[i]n another case, where a properly authenticated Form 1099-C is introduced into evidence along with other circumstantial evidence of cancellation of the debt, the Form 1099-C could be properly considered by the trier of fact under the totality of the circumstances on the ultimate issue of whether the debt in question was, in fact, cancelled." Id.

At this stage of the proceedings, the court is unable to conclude that Cashion forecloses the plaintiffs' claims that are premised on the assertion that the Line of Credit debt was cancelled by Beneficial. Unlike Cashion, the present case is not before the court on a motion for summary judgment. Nor do the plaintiffs rely "solely on the 1099-C Form" to support their assertion that a cancellation occurred. Id. at 180. Instead, the plaintiffs' second amended complaint includes a number of other factual allegations relevant to this issue, including the fact that both Ms. Woodson and her daughter were told, after the 1099-C Form was issued, that no additional

6

payments were required on the Line of Credit. The additional allegations in the second amended complaint, when considered in conjunction with the 1099-C Form, support the plausible inference that the Line of Credit debt was cancelled by Beneficial. Accordingly, the defendants' motions to dismiss Counts One through Four will be denied.

## II. Counts Five and Six

Although Beneficial moved to dismiss the second amended complaint in its entirety, its brief in support of the motion did not specifically address Counts Five and Six. Those counts were addressed, for the first time, in Beneficial's reply brief, after the deficiency was pointed out by the plaintiffs. "'The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered.'" Moodie v. Kiawah Island Inn Co., LLC, 124 F. Supp. 3d 711, 725 n.11 (D.S.C. 2015) (quoting Clawson v. FedEx Ground Package Sys., Inc., 451 F. Supp. 2d 731, 734 (D. Md. 2006)); see also Epperson v. Payne, No. 4:16-cv-00050, 2017 U.S. Dist. LEXIS 47735, at *25 (W.D. Va. Mar. 30, 2017) (Kiser, J.) (same). For this reason, the court will not consider Beneficial's arguments in favor of dismissing Counts Five and Six, and will deny its motion with respect to those counts.

## Conclusion

For the reasons stated, the defendants' motions to dismiss will be denied. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 6th day of April, 2017.

_____
Chief United States District Judge