CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
03/26/2019
JULIA C. DUDLEY, CLERK
BY: /s/ H. Wheeler
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| TONIA WOODSON NEWTON, *ET AL.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> BENEFICIAL FINANCIAL I, INC., *ET AL.*, <br><br> *Defendants.* | CASE NO. 3:16-CV-00058 <br><br> **MEMORANDUM OPINION** <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court upon Defendants' renewed motions for summary judgment. (Dkts. 142, 144). For the reasons stated herein, the Court will grant the motions.

I. FACTS & PROCEDURAL HISTORY

The Court's February 16, 2018 opinion adequately outlined the standard of review on summary judgment, (dkt. 95 at 3–4), as well as the facts of this case. (*Id*. at 1, 4 – 6). The Court incorporates by reference these portions of its February 16 opinion. Nonetheless, a brief summation of the factual background and procedural history of the case is in order.

Judith Woodson purchased a home in Gordonsville, Virginia in January 2005. She financed the purchase with a mortgage issued by a predecessor of Defendant Beneficial Financial I, Inc. ("Beneficial"). Approximately one year later, Woodson received a second loan from Beneficial based on her equity in the home. Beneficial sold this second loan to Defendant Ditech Financial, LLC ("Ditech"). Woodson eventually fell behind in making payments on these loans. For fiscal year 2012, Beneficial completed a Form 1099-C for the second loan, indicating that Woodson's mortgage debt had been discharged. Beneficial presents evidence that it subsequently issued a corrected Form 1099-C for fiscal year 2012. When Woodson defaulted on the second loan by failing to make any payments after January 2012, Beneficial marked her

second loan account as "charged off," which Beneficial maintains is an internal notation reflecting an unlikelihood of repayment.

Woodson died in 2015, and the three plaintiffs ("the heirs") inherited the home. Due to delinquencies on the loan, Beneficial moved to foreclose on the property in August 2016. The heirs filed suit in state court to stop the foreclosure proceedings. (Dkt. 1). Defendants removed the case to federal court based on diversity jurisdiction. Judge Conrad transferred the case to me in December 2017. (Dkt. 87). During the pendency of this suit, Carrington Mortgages Services, LLC ("Carrington"), who is not a party to the suit, purchased the first mortgage from Beneficial.

In their quiet title action, the heirs asked the Court to determine whether Beneficial discharged the home equity loan (Count One). The heirs sought the removal of a lien related to this loan (Count Two) and compensatory damages based on Beneficial's refusal to remove the lien (Count Three). The heirs sought declaratory judgments preventing foreclosure and the imposition of related costs (Counts Four and Five). Lastly, the heirs sought a declaratory judgment on the balance of the mortgage loan and a related lien (Count Six). (Dkt. 35).

On February 16, 2018, this Court granted Defendants' motions for summary judgment and denied the heirs' motion to compel discovery as moot by operation of Judge Conrad's scheduling order. (Dkt. 96). However, on May 2, 2018, the Court granted the heirs' motion for reconsideration after the heirs offered e-mail correspondence showing that the motion to compel was not moot. (Dkt. 111). The Court vacated its previous orders in part, reinstated the case on its active docket, reopened the motions to compel and for summary judgment, and referred the motion to compel to U.S. Magistrate Judge Joel C. Hoppe. (*Id*. at 3).

Judge Hoppe granted the motion to compel in part, permitting the heirs to reopen their deposition of Beneficial in light of six newly-produced pages of account notes and requiring

2

Beneficial to, if possible, produce a letter corresponding to an entry in the aforementioned account notes. (Dkt. 118). Judge Hoppe subsequently allowed the heirs to serve three additional interrogatories on Beneficial "requesting information about the steps Beneficial took to uncover" 156 pages of documents "Beneficial's counsel belatedly produced" and "the steps Beneficial has taken to ensure it has produced all non-privileged documents" requested by the heirs and relevant to the case. (Dkt. 139 at). The sole question now is whether any of this discovery added new evidence that changes the Court's previous conclusion that Defendants' motions for summary judgment should be granted.

## II. ANALYSIS

The heirs contend that it would be premature to grant summary judgment because discovery remains outstanding under Judge Hoppe's order permitting additional interrogatories. The heirs further argue that the Court should deny summary judgment on substantive grounds because a genuine dispute of material fact exists about whether Defendants cancelled the home equity loan. Defendants' arguments with respect to outstanding discovery are without merit, and the Court again concludes that no reasonable jury could find that the home equity loan was discharged. Thus, the Court will grant Defendants' renewed motions for summary judgment.

### A. The Heirs' Discovery-Related Arguments

The heirs assert that it would be "premature" to grant summary judgment because Beneficial's responses to the three additional interrogatories authorized by Judge Hoppe were "woefully deficient." (Dkt. 148 at 4, 18–20). Specifically, the heirs contend that Beneficial "refused to identify" all of the "technology systems that it used" from January 2005 to June 2018 "to produce under Bates numbers the documents it produced in discovery"; "refused to provide any meaningful facts as to when, where, or how it searched available sources of information";

3

and "refused to provide any information concerning its [document retention accessibility] policies and practices." (*Id*. at 4). In a declaration, the heirs' counsel maintains that Beneficial "should be required to answer" these interrogatories, and "Plaintiffs should be allowed to re-open and fully depose" Beneficial regarding irregularities in Defendants' production of documents. (Dkt. 148-25 at 2).

The Court notes at the outset that Judge Hoppe already denied the heirs' motion to re-open and extend their deposition of Beneficial. (Dkt. 139). Moreover, the Court has reviewed Beneficial's responses to the heirs' interrogatories, (dkt. 148-3), and finds Beneficial's answers responsive and in compliance with Judge Hoppe's order delineating the permissible scope of the three additional interrogatories. (Dkt. 139).

Most importantly, the heirs fail to articulate how any information sought in response to these interrogatories, or in a re-opened deposition of Beneficial, could create a genuine dispute of material fact about whether Defendants discharged the home equity loan. *See Hodgin v. UTC Fire & Sec. Am. Corp., Inc.*, 885 F.3d 243, 250 (4th Cir. 2018) (affirming district court's denial of Rule 56(d) motion because plaintiffs "failed to demonstrate that the information they sought to attain in the depositions would create a genuine issue of material fact"); *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015) (same). Apart from conclusory statements that the underlying documents at issue are "of crucial importance" because Ms. Woodson is now deceased, (dkt. 148 at 19), the heirs have "not explained" how any further information from Beneficial on the subjects raised in the three interrogatories "could possibly create a genuine

4

issue of material fact sufficient for [them] to survive summary judgment." *Poindexter*, 792 F.3d at 411. Thus, the heirs' arguments concerning outstanding discovery fail.[1]

B. **Summary Judgment**

As in its previous opinion, the Court will assess the heirs' claims as two distinct categories: those seeking relief related to the home equity loan (Counts One through Four), and those seeking relief related to the first mortgage (Counts Five and Six). As before, the claims related to the home equity loan fail because no reasonable jury could find that Beneficial discharged the loan in writing. The claims related to the first mortgage fail because they became moot upon the cancellation of the foreclosure sale and Beneficial's sale of the mortgage to Carrington. Accordingly, the Court will grant Defendants' motions for summary judgment with respect to Counts One through Four, and will dismiss Counts Five and Six as moot.

1. **Claims Related to the Home Equity Loan (Counts One through Four)**

With respect to Counts One through Four, the sole question at this juncture is whether any new evidence has emerged that creates a genuine dispute of material fact about whether Beneficial discharged the home equity loan in writing.[2]

---

[1] The heirs also argue that Defendants' motions should be denied because Defendants rely on "inadmissible evidence," namely business records for which no foundation has been or can be laid, since "anomalies" in Defendants' document productions "establish a profound lack of trustworthiness" in these records. (Dkt. 148 at 20). This argument fails. Beyond vague and unsubstantiated statements that Defendants' records are "manifestly disorganized and incomplete," (*id.*), the heirs offer no substantive reasons to doubt the authenticity and trustworthiness of these records. Moreover, the heirs' argument that this evidence is presently inadmissible is insufficient because "[u]nder the current version of" Fed. R. Civ. P. 56, "facts in support of or in opposition to a motion for summary judgment need not *be* in admissible form; the new requirement is that the party identifies facts that *could be* put in admissible form" at trial. *Jones v. W. Tidewater Reg'l Jail*, 187 F.Supp.3d 648, 654 (E.D. Va. 2016). The heirs offer no coherent argument that the records in question *could never be* put in admissible form at trial.

[2] The Court notes that "[t]he responsibility to comb through the record in search of facts relevant to summary judgment falls on the parties—not the court." *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017).

5

A plaintiff asserting a claim for quiet title must demonstrate that "he has satisfied his legal obligations to the party in interest and, thus, maintains a superior interest in the property." *Jones v. Fulton Bank*, N.A., 565 F. App'x 251, 253 (4th Cir. 2014). As delineated in the Court's prior opinion, (dkt. 95 at 7–9), the loan agreement between Woodson and Beneficial stated that "[i]n order for any amendment to [the loan agreement] to be valid, it must be in writing." (Dkt. 69-4 at 5). Additionally, under Virginia's statute of frauds, "[a]ny modification of a mortgage agreement must [] be in writing to be enforceable." *Baird v. Fed. Home Loan Mortg. Corp.*, No. 3:15-cv-00041, 2016 WL 6583732, at *3 (W.D. Va. Nov. 4, 2016), *aff'd*, 706 F. App'x 123 (4th Cir. 2017). Here, there is no evidence that Defendants returned the deed of trust or marked the note paid, and the heirs do not contend that the home equity loan was ever fully repaid. Rather, as before, the heirs rely entirely on Beneficial's alleged cancellation of the home equity loan.

The heirs' present no new evidence that alters the Court's previous conclusion that no reasonable jury could find the home equity loan was discharged. Citing evidence already considered by the Court, (dkts. 148-15–19), the heirs aver that Beneficial agreed in writing to cancel the loan upon Woodson's payment of $4,943.44 by October 31, 2012, and that Beneficial subsequently advised Newton (one of the heirs) over the phone that no further payments were due on the loan. Although the heirs argue that Beneficial "received" $4,943.44 in payments as acceptance of Beneficial's offer to cancel the loan, (dkt. 148 at 15), Beneficial's evidence of Woodson's payments shows that Woodson only paid $4,114.76, which falls short of the amount the heirs argue would have settled the loan. (Dkt. 148-15 at 2–7). Moreover, even crediting Newton's characterizations of her phone calls with Beneficial as true, such verbal assurances were insufficient to relieve Woodson of obligations to make further payments because both the loan agreement and Virginia's statute of frauds required any amendment to the loan agreement to

6

be in writing. *See Baird*, 2016 WL, at *3.³ The Court notes that it already considered this theory, concluding that no reasonable jury could find that the loan was actually discharged in writing on the basis of this evidence. The Court incorporates by reference that reasoning and conclusion from its previous opinion. (Dkt. 95 at 8–9).

Likely in recognition of the fact that cancellation of the home equity loan would need to be reflected in writing, the heirs yet again narrow their focus on the Form 1099-C issued by Beneficial. A Form 1099-C is a "reporting mechanism to the IRS" that entities must file upon discharging a debt. *F.D.I.C. v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013). "[T]he mere fact that a Form 1099-C is filed does not constitute sufficient evidence, standing alone, that a debt has been cancelled." *Id*. This is so because the Form 1099-C may "have simply been filed by mistake." *Id*.

Here, it is undisputed that Beneficial sent Woodson a Form 1099-C purporting to cancel the debt, and, until this point, it had been undisputed that Beneficial later issued a corrected Form 1099-C indicating that no debt had been discharged. (Dkts. 95 at 10; 69-7). The heirs now point to supposed "irregularities" on the original and corrected Form 1099-Cs Beneficial produced as evidence that "the 'corrected' 1099-C [Beneficial] relied upon was created in 2015, after [Beneficial] had sold the HELOC and after Plaintiffs presented [the original] 1099-C to [Beneficial]." (Dkt. 148 at 15). Specifically, the heirs cite differences between the original Form 1099-C Woodson received and the copies of the original and corrected Form 1099-Cs Beneficial produced, including discrepancies in the way Woodson's Social Security number and

---

³ The heirs' evidence that Beneficial employees were "not aware of" the home equity loan when the heirs attempted to acquire the property through a short sale, (dkt. 148-19), and that Beneficial did not provide Woodson with notice that it had sold the loan, (dkt. 148-20), is not evidence that the loan was ever discharged in writing and therefore does not create genuine dispute of material fact on that question.

7

the IRS website address appears on these documents, as well as discrepancies in the "CII"[4] numbers displayed on these two sets of documents. The heirs note that the original Form 1099-C Beneficial produced is marked "CII00000001," and the corrected Form 1099-C Beneficial produced is marked "CII00000002," (dkt. 148-8–9), whereas the original Form 1099-C Woodson received is marked "CII00006684." (Dkt. 148-7). The heirs assert that these discrepancies "would be consistent" with Beneficial "having restarted the then-decommissioned CII platform to create these two 1099-Cs which restarted the document numbering feature." (Dkt. 148 at 8). Under the heirs' theory, these irregularities, coupled with various internal notations produced by Beneficial, (dkt. 148-6, 148-12), suggest that "the 1099-Cs relied upon by Defendants may have been 'created' at a subsequent date in response to" the heirs' claims. (Dkt. 148 at 6–9).

Although the heirs do not affirmatively state that they now dispute whether Beneficial actually issued a corrected Form 1099-C, these arguments appear to indicate that the heirs have adopted that position. For several reasons, the Court concludes that this speculative evidence could not support an inference that Beneficial never issued a corrected Form 1099-C or allow a reasonable jury to find that the loan was discharged in writing.

First, the discrepancies the heirs highlight—apparently as evidence that the corrected Form 1099-C was never issued—also exist with respect to the original Form 1099-C Woodson received. Although the heirs extrapolate from these discrepancies to suggest that the corrected Form 1099-C was never issued, the heirs do not apply the same logic to the original Form 1099-C. Not only do the heirs not dispute that Beneficial issued the original Form 1099-C and that Woodson received it, they rely on the issuance and receipt of the original Form 1099-C as their primary evidence that Beneficial discharged the home equity loan. Thus, in essence, the heirs

---

[4] CII was Beneficial's "original servicing platform," which Beneficial stated in a letter to Judge Hoppe had been "replaced" in April 2013 with "LoanServ." (Dkt. 114 at 2).

would ask a jury to infer from these discrepancies that the *corrected* Form 1099-C was never issued but to then ignore the same discrepancies and find that the *original* Form 1099-C was issued. Such an inference would be unwarranted and unreasonable. At most, the irregularities the heirs point to could support an inference that the Form 1099-Cs Beneficial produced were duplicates created on the CII software system in response to discovery requests, not an inference that Beneficial never issued the corrected Form 1099-C in the first instance.

Second, even assuming that a reasonable jury could find that Beneficial never issued the corrected Form 1099-C, this would still leave only the original Form 1099-C purporting to cancel the debt as the heirs' sole evidence that Beneficial discharged the loan in writing. Although a "properly authenticated Form 1099-C . . . introduced into evidence along with other circumstantial evidence of cancellation of the debt" could "be properly considered by the trier of fact under the totality of the circumstantial evidence of cancellation," a Form 1099-C alone is not sufficient to withstand a motion for summary judgment. *Cashion*, 720 F.3d at 180. Here, the evidence reflects that Beneficial did issue a corrected Form 1099-C. (Dkts. 145-2, 148-6, 148-9, 150-1). And, more importantly, the parties' behavior leaves no doubt that the original Form 1099-C did not reflect a discharge of debt, as Beneficial and Woodson worked together in an attempt to settle the home equity loan in 2013, after the "date of identifiable event" specified on both Form 1099-Cs (May 30, 2012).[5] (Dkts. 69-6 at 5; 84-1 at 614; 145-3). As discussed above, none of the other evidence the heirs rely on would allow a reasonable jury to find that the loan was discharged in writing.[6] Indeed, Newton confirmed in her deposition that she "didn't receive

---

[5] The Court addressed any analyzed this evidence in its prior opinion and now incorporates by reference that portion of the opinion. (Dkt. 95 at 10–11).

[6] The heirs assert that Beneficial's document productions have been "incomplete," citing Beneficial's alleged failure to produce Form 1098s, creditor's copies of the Form 1099-Cs, and correspondence explaining the mistaken 1099-C and subsequent corrected 1099-C. (Dkt. 148 at

9

anything in writing specifically saying that [Woodson] did not have to make payments on the line of credit." (Dkt. 77-1 at 60).

Accordingly, the discrepancies between the Form 1099-C Woodson received and the Form 1099-Cs Beneficial produced constitute only a speculative "scintilla of evidence" from which no reasonable jury could find that Beneficial did not issue the corrected Form 1099-C or that the home equity loan was ever discharged in writing. *Dash v. Merryweather*, 731 F.3d 303, 311 (4th Cir. 2013). To defeat a motion for summary judgment, the heirs "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Id.* at 311. Because the heirs still have "not come forward with evidence that creates a genuine issue of material fact as to whether" Beneficial ever discharged the home equity loan in writing, the Court finds that a reasonable jury could not find in the heirs' favor. *Cashion*, 720 F.3d at 181. Accordingly, Defendants' motions for summary judgment on the heirs' action to quiet title (Count One) must be granted.

For reasons adequately explained in the Court's prior opinion, (dkt. 95 at 14), Counts Two, Three, and Four similarly hinge on whether the home equity loan was ever discharged in writing. Because the heirs have not introduced evidence that would allow a reasonable jury to find that this loan was discharged, Defendants are also entitled to summary judgment on these three counts.

### 2. Claims Related to the First Mortgage (Counts Five and Six)

Two counts remain, and both will be dismissed as moot. With respect to Count Five, the heirs concede that this count is moot since it "seeks injunctive relief to prevent foreclosure

---

5–6). But the heirs offer no explanation of how these supposed deficiencies create a genuine dispute of material fact about whether the home equity loan was ever discharged in writing. *See Hodgin,* 885 F.3d at 250.

proceedings" and "those proceedings have been cancelled." (Dkt. 148 at 17). With respect to Count Six, which seeks a declaratory judgment about the status of the mortgage loan and a related lien, the heirs contend that this count is not moot, citing evidence that Beneficial added improper charges to the mortgage loan. (*Id*. at 17–18). However, the Court previously dismissed this count because the sale of the mortgage to Carrington in August 2017 rendered it moot. Although "the heirs may still dispute whether the property may be foreclosed on and what the balance of the outstanding mortgage is," such disputes are now with Carrington, not Beneficial. (Dkt. 95 at 15–16). The heirs raise no argument or evidence to alter that conclusion.

"The jurisdiction of federal courts is limited to live cases or controversies." *Gupton v. Wright*, No. 7:15-cv-00214, 2016 WL 524656, at *2 (W.D. Va. Feb. 8, 2016). "If developments occur during the course of a case which render the court unable to grant a party the relief requested, the claims must be dismissed as moot." *Id*. Accordingly, because the cancellation of the foreclosure proceeding and the sale of the mortgage to Carrington render Counts Five and Six moot, the Court must dismiss these claims.

### III. CONCLUSION

The Court will grant Defendants' motions for summary judgment with respect to Counts One through Four because the heirs have not presented evidence from which a reasonable jury could find that the home equity loan was discharged in writing. Counts Five and Six will be dismissed as moot. An appropriate order will issue.

Entered this 26th day of March, 2018.

*[signature: Norman K. Moon]*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE